**FILED**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**DEC 0 1 2008**

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

In re:

WILLIAM G. BOLIEK

    Debtor.
_____/

Case No. 6:07-bk-03183-ABB
Chapter 7

THE CADLE COMPANY II, INC.

    Plaintiffs,

vs.

WILLIAM G. BOLIEK

    Defendant.
_____/

Adv. Pro. No. 6:07-ap-00171-ABB

## MEMORANDUM OPINION OVERRULING OBJECTION TO DISCHARGE

This matter came before the Court on the Complaint Objecting to Discharge ("Objection") of Debtor, William G. Boliek ("Boliek") filed by The Cadle Company II, Inc. ("Cadle"). A hearing on the Objection was held on October 2, 2008 at which counsel for the parties appeared and Boliek testified. The parties were granted leave to submit supplemental legal memoranda and proposed findings of fact and conclusions of law in support of their positions. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and other documents filed herein, the evidence presented, hearing live argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

### *Case Background*

Boliek filed this chapter 7 case on July 24, 2007 ("Petition Date"). Cadle, a creditor, with a judgment against Boliek in the amount of $107,074.60, requests denial of Boliek's discharge pursuant to § 727(a)(2)(A) alleging Boliek, within 60 days of the Petition Date, fraudulently transferred his interest in non-exempt Florida real property to Florida S.T.A.R. Corp, a DE company ("STAR."). The Objection was filed on October 23, 2007.

### *Land Transactions*

On February 5, 1997, Robert Boliek, as Trustee under a Trust Agreement dated July 22, 1991, executed a Warranty Deed transferring a one-half (1/2) interest in real property located in Florida (the "Property"), to his son, Boliek, as "Trustee" (Joint Exhibit 1). The remaining undivided interest in the underlying land was then owned by Doris Boliek.

On February 5, 1997, Boliek entered into a Land Trust Agreement (Joint Exhibit 2) with his four sisters (the "Land Trust"), in which Boliek agreed to hold title to the one-half (1/2) interest in the Property, in Trust, for the named beneficiaries of the Land Trust, which including himself with a one-fifth (1/5) interest. The Land Trust provides the trustee (Boliek) with the authority to sell the Property, distribute the proceeds (less the costs of sale) in proportion to the interests of the beneficiaries and render an accounting (Joint Exhibit 2). The results of the transactions in 1979 demonstrate that Boliek did not hold title to the Property in his own name, but held it solely as Trustee for himself and his sisters, both under the initial grant and under the contemporaneous Land Trust.

2

In March 2007, STAR solicited Boliek to purchase of the Property from him. Boliek's individual state court litigation with Cadle was not a consideration in his sale of the Property for the benefit of the Land Trust. On May 4, 2007, Boliek, individually and as Trustee, executed a Trustee's Deed to the undivided one-half (1/2) interest in the Property held by the Land Trust to STAR (Joint Exhibit 7). The sale terms included a $10,000 down payment and the delivery of a note and mortgage in the amount of $240,000, subject to conveyance of the remainder of the land to STAR within one year of the sale (Joint Exhibit 8). The Note was payable interest only, monthly, with a balloon payment, and would be reduced proportionally to the extent that Boliek could not deliver Doris Boliek's interest to STAR. The transfer of the Property to STAR was an arms-length transaction, and STAR is an unrelated entity. Boliek did not retain possession of the Property and exercised no control, direct or indirect after the transfer.

The STAR Note was reduced by one-half (1/2) on June 9, 2008 ($120,000.00), based on the heirs of Doris Boliek selling the remaining one-half (1/2) interest in the Property to STAR (Joint Exhibits 14 and 15). Boliek created a bank account in the name of B-5, LLC, on which he is the sole signatory, for the benefit of the beneficiaries under the Land Trust. Boliek maintained a ledger of five (5) sub-accounts within the B-5 account in the names of the five (5) beneficiaries and deposited interest payments from the STAR Note into the B-5 account (Joint Exhibit 13). As of September 28, 2008, Boliek has turned over to the chapter 7 Trustee checks related to the Land Trust in the amount of $12,632.01 representing his interest in the Star Note.

3

### *Plaintiff's Complaint*

Cadle's sole contention is Boliek should be denied a discharge because he, within one year of the Petition Date, transferred the Property with the intent to hinder, delay or defraud his creditors. Cadle would draw the inference from the facts that the transfer of Boliek's scheduled interest in the Property held in trust to a Note and Mortgage held in trust was done with the intent to hinder, delay or defraud creditors.

### *Debtor's Schedules and Statements*

Boliek made a series of disclosures about the Property and its transfer in his initially filed and amended schedules. He first disclosed on July 24, 2007 on Schedule A he was one-sixth (1/6) owner of 1.8 acres in Ocala, Florida with a value of $4,000.00 (Doc. No. 1). On September 28, 2007, Boliek amended Schedule B to list and describe the Note and Mortgage held in the Land Trust for himself and his sisters (Doc. No. 21). Simultaneously, Boliek amended the Statement of Affairs to disclose the transfer of the Property to STAR, an unrelated entity, and the resulting $240,000.00 mortgage receivable he held in the Land Trust for himself and his sisters (Doc. No.22). Boliek also amended his Summary of Schedules to reference the full value of the STAR Note as personal property, even though he held a much lesser interest.

### *Disputed Transaction Disclosures*

Boliek disclosed an interest in the Property in his Schedules at the outset of his chapter 7 case. The disclosure was not accurate in that it portrayed a share of a fee simple interest in real estate and not a beneficial interest in a Land Trust, but it did provide inquiry notice that Boliek held an interest in the Property sufficient to put any creditor on inquiry notice that it was an asset. He testified his later amendments to the schedules

4

were done on the advice of counsel, when all of the facts about the exchange for a note and mortgage were presented. Boliek's testimony was credible and is supported by the events and chronology of his main case. The Chapter 7 Trustee has had no issues with Boliek's disclosures as evidenced by the absence of any motions to compel, objections, or adversary proceedings instituted by him against the Boliek. Cadle failed to establish Boliek acted with the intent to hinder, delay, or defraud creditors.

## CONCLUSIONS OF LAW

Cadle seeks denial of the Boliek's discharge pursuant to 11 U.S.C. Section 727(a)(2)(A) alleging within one year of the petition date, he transferred the Property with the intent to hinder, delay or defraud his creditors. The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); Fed. R. Bankr. P. 4005.

Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunger (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986). "Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets." 6 Collier on Bankruptcy ¶727.02, at 727-13 (15th ed. Rev. 2005). A discharge should be denied where the omission from the schedules or statement of financial affairs is both fraudulent and material. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991).

### *11 U.S.C. § 727(a)(2)(A)*

A discharge will be denied where a debtor has, within one year of the petition date, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate . . .

5

transferred, removed, destroyed, mutilated, or concealed property of the debtor." 11 U.S.C. § 727(a)(2)(A). Cadle only asserts a transfer occurred and does not allege removal, destruction, mutilation or concealment as a basis for the Objection to Boliek's discharge. Those elements of the statute are not applicable.

A creditor asserting the intent to defraud pursuant to Section 727(a)(2)(A) bears the significant burden of establishing actual fraudulent intent. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 306 (11th Cir. 1994) (*citing* Wines v. Wines (In re Wines), 997 F.2d 852, 856 (11th Cir. 1993). Constructive fraud is not adequate. Id. "Concealment under this section occurs when a debtor's interest in the property is not obvious, but the debtor continues to reap the benefits the property has to offer." In re Greene, 340 B.R. 93, 98 (Bankr. M.D. Fla. 2006) (*citation omitted*).

Cadle has not established the requisite intent to defraud to support its Section 727(a)(2)(A) allegations. Neither has Cadle established facts which would support findings that the any of the "badges of fraud" are present in the underlying transactions. The 1997 deed transfer to Boliek, in Trust, by his father under a 1991 Trust, states on its face that "[t]he purpose of the Deed is to substitute Trustees. No other consideration has been paid or received" (Joint Exhibit 1).

Boliek created an express trust for the benefit of himself and his sisters on the same day he received title to the Property interest from his father "in Trust." Pursuant to the Land Trust, legal title to the Property was expressly to be held for the interests of the named beneficiaries (Joint Exhibit 2) and Boliek made an accounting of income and expense to the beneficiaries under the Land Trust. The sale to STAR was arm-length and Boliek does not exercise any control of the Property after the sale. The transaction

identified by Cadle in its Objection did not deprive Boliek's estate of assets. It merely transformed the Land Trust's interest from a proportional real estate interest to an interest in a Note secured by a mortgage on the Property, and Boliek's interest followed accordingly.

Debtors are required to be transparent in their financial disclosures. Boliek's original disclosures were less than complete, but were remedied through amendments to his schedules. Boliek made adequate disclosures regarding his financial accounts, his interest in the Property, its transfer and his interests in the proceeds of the Note in his Amended Schedules. He has cooperated with the Trustee and provided the appropriate information in the Chapter 7 case.

Cadle has not established the alleged elements of 11 U.S.C. Section 727(a)(2)(A). The transfer of title to the Property by Boliek to STAR on May 16, 2007 was not made with the intent to hinder, delay, or defraud Cadle, any creditor or an officer of the estate. Boliek is entitled to a discharge.

A separate judgment in favor of the Boliek and against the Cadle consistent with this Memorandum Opinion shall be entered contemporaneously in accordance with Fed. R.Bankr.P. 9021.

Dated this 1st day of December 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge